UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STARS FOR ART PRODUCTION FZ,      *
LLC,                               *
                                   *
            Plaintiff,             *
                                   *
      v.                           *        Civil Action No. 10-10629-JLT
                                   *
DANDANA, LLC, et al.,              *
                                   *
            Defendants.            *

MEMORANDUM

August 22, 2011

TAURO, J.

I.      Introduction

        An Egyptian corporation, Stars for Art Production FZ LLC ("Plaintiff"), owns a music

channel, originally entitled "Zoom" and later replaced with "Mazzika."  Plaintiff entered into a

contract with a New Jersey corporation, Dandana, LLC ("Dandana").  The contract provided

Dandana a license to broadcast that music channel and the channel was transmitted into

Massachusetts through the services of Dish DBS Corporation ("Dish DBS"), Dish Network

Corporation ("Dish Network"), and Dish Network LLC ("Dish LLC") (collectively "Dish" or

"the Dish Defendants"), which are all predominately based in Colorado.

        Plaintiff sued both Dandana and Dish (collectively "Defendants"), primarily alleging that

Dandana failed to pay certain fees owed under Plaintiff's and Dandana's contract.[1]  Defendants,

however, contend that this court lacks personal jurisdiction over Defendants and that venue is

_____

[1] 1st Am. Compl., 3–14 [#15].

improper. Presently at issue are Defendants' Motion to Dismiss Amended Complaint [#25] and

Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery with Statement of Reasons

[#30]. For the following reasons, Defendants' Motion to Dismiss is ALLOWED IN PART and

DENIED IN PART, and Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery is

DENIED WITHOUT PREJUDICE.

II.     Background[2]

Plaintiff, a United Arab Emirates LLC with its principal place of business there,[3] owns the

music television channels "Zoom" and "Mazzika."[4] Dish Network, a Nevada corporation with a

principal place of business in Colorado,[5] provides, via satellite transmission, television channels to

its subscribers.[6] Dish Network is the parent company of Dish DBS, which is the parent company

of Dish LLC.[7] Dish DBS and Dish LLC are both organized under the laws of Colorado and have

their principal places of business in Colorado.[8] The other Defendant, Dandana, provides Dish

---

[2] Because the issues analyzed here arise in the context of a motion to dismiss, this court presents the facts as they are related in Plaintiff's Complaint, Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008), and construes those facts in the light most favorable to Plaintiff, see Pettengill v. Curtis, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007)).

[3] 1st Am. Compl. ¶ 1 [#15].

[4] 1st Am. Compl. ¶ 11 [#15]. "Mazzika" is the replacement of the "Zoom" channel. See infra note 20 and accompanying text.

[5] 1st Am. Compl. ¶ 4 [#15]; Aff. Brett Kitei Supp. Defs.' Mot. Dismiss ¶ 3 [#28] [hereinafter Kitei Aff.].

[6] 1st Am. Compl. ¶ 12 [#15].

[7] Kitei Aff. ¶ 2 [#28].

[8] 1st. Am. Compl. ¶ 3, 5 [#15]; Kitei Aff. ¶ 3 [#28].

Network with certain television channels for Dish Network to broadcast to Dish Network's subscribers.[9]  Dandana owns or has the licensing rights to broadcast those channels on the Dish Network.[10]

A.  The Parties' Agreement and License

Around March 9, 2005, Plaintiff entered into a written agreement with Dandana ("2005 Agreement").[11]  In the 2005 Agreement, Dandana acquired the exclusive licensing rights to broadcast the "Zoom" channel in the United States (the "License").[12]  In consideration for the License, Dandana promised and agreed to pay Plaintiff $180,000 per year, in quarterly installments.[13]

Based on the 2005 Agreement, Dandana negotiated with Dish Network to have Dish Network broadcast the "Zoom" channel.[14]  In exchange, Dish Network agreed to pay Dandana an amount of money based on the number of subscribers that paid Dish Network for the right to view the "Zoom" channel.[15]

---

[9] 1st Am. Compl. ¶ 13 [#15].  Dandana is a New Jersey LLC with its principal place of business in Rochelle Park, New Jersey.  1st Am. Compl. ¶ 2 [#15].

[10] 1st Am. Compl. ¶ 13 [#15].

[11] 1st Am. Compl. ¶ 18 [#15].  The term of the 2005 Agreement was for five years.  1st Am. Compl. ¶ 26 [#15].

[12] 1st Am. Compl. ¶ 18 [#15].

[13] 1st Am. Compl. ¶ 18 [#15].  Dandana also promised to pay Plaintiff 50% of all merchandise and advertisement revenues generated by Dandana from the broadcast of the "Zoom" channel.  1st Am. Compl. ¶ 18 [#15].

[14] 1st Am. Compl. ¶ 20 [#15].

[15] 1st Am. Compl. ¶ 20 [#15].

B.    The Alleged Breach and Modification of the Agreement

Dandana subsequently failed to honor the 2005 Agreement by not paying Plaintiff the money that Dandana owed.[16]  Around August 7, 2007, because of Dandana's failure to pay, Plaintiff sought to terminate the 2005 Agreement.[17]

On August 29, 2007, Dandana and Plaintiff instead modified the 2005 Agreement with an Addendum Agreement ("2007 Agreement").[18]  As part of the 2007 Agreement, Dandana and Plaintiff agreed that either party "shall have the right to refer any dispute . . . to the federal courts of the United States . . . ."[19]

Around January 19, 2009, Dandana and Plaintiff again amended the 2005 Agreement by substituting the "Mazzika" channel for the "Zoom" channel.[20]

Dandana refused to pay Plaintiff money owed ($428,000) under the License.[21]

On March 8, 2010, Plaintiff notified Dish Network of Dandana's breach and requested that Dish Network cease broadcasting the "Mazzika" channel or withhold payment to Dandana pending a resolution of the dispute between Plaintiff and Dandana.[22]  Dish Network did not

---

[16] 1st Am. Compl. ¶ 21 [#15].

[17] 1st Am. Compl. ¶ 22 [#15].

[18] 1st Am. Compl. ¶ 23 [#15].

[19] 1st Am. Compl., Ex. B [#15] (attaching Addendum to the Agreement between Plaintiff and Dandana).

[20] 1st Am. Compl. ¶ 28 [#15].

[21] 1st Am. Compl. ¶ 29 [#15].

[22] 1st Am. Compl. ¶ 31 [#15].

comply with this request.[23]

C.     This Litigation

Plaintiff brings six counts against Defendants here: (I) breach of contract against Dandana; (II) breach of implied covenant of good faith and fair dealing against Dandana; (III) unjust enrichment against Dandana; (IV) quantum meruit against Dandana; (V) fraud and misrepresentation against Dandana; and (VI) quantum meruit against Dish Network.[24]

D.     Allegations that Allegedly Form the Basis of Personal Jurisdiction over Defendants

In addition to the facts above, Plaintiff alleges the following facts to support the exercise of personal jurisdiction over Defendants:

Dish DBS is registered to do business in Massachusetts and all the Dish Defendants do business in the Commonwealth.[25]  Dish LLC provides satellite programing to residents of Massachusetts.[26]  Dish Network is the exclusive broadcaster of the "Mazzika" channel in Massachusetts.[27]

Dish maintains a website that reaches into Massachusetts.  Specifically, people in Massachusetts can order Dish's products through Dish's website.[28]  People also can communicate

---

[23] 1st Am. Compl. ¶ 32 [#15].

[24] 1st Am. Compl. ¶ 37–68 [#15].

[25] 1st Am. Compl. ¶ 3–5 [#15]; Compl. ¶ 3–5 [#1].

[26] Kitei Aff. ¶ 8 [#28].

[27] 1st Am. Compl. ¶ 16 [#15].

[28] Pl.'s Opp'n Mot. Dismiss, Ex. 1 (attaching Affidavit of Eric Shwartz ¶ 5–6) [#29] [hereinafter Shwartz Aff.].

with Dish's representatives through a "realtime interactive chat."[29]

Defendants promote, market, and sell to Massachusetts subscribers the right to view television programs that are transmitted to Dish Network by Dandana.[30] Dish airs television advertisements in Massachusetts that direct people to its website and advertise Dish's services.[31] Dish solicits customers in Massachusetts through its website and customer representatives.[32] Dish, on its website, also solicits employment applications for positions in Massachusetts.[33]

Dish Network has at least four locations in Massachusetts.[34] Dish employs various individuals at these locations, including perhaps individuals engaged in servicing subscribers.[35]

Dish also has over 70,000 customers in Massachusetts.[36] As of December 2009, Dish had a total of 14 million customers.[37]

---

[29] Shwartz Aff. ¶ 5–6 [#29].

[30] 1st Am. Compl. ¶ 14–15 [#15].

[31] Shwartz Aff. ¶ 2 [#29] (attesting to having seen Dish Network's advertisements).

[32] Shwartz Aff. ¶¶ 5–6 [#29]. Dish customer representatives are available through live interactive chats on Dish's website. Schwartz Aff. ¶¶ 5–6 [#29].

[33] Shwartz Aff. ¶ 7 [#29].

[34] Shwartz Aff. ¶ 7 [#29].

[35] See 1st Am. Compl. ¶ 17 [#15] (naming at least four different titles or positions of Dish Network employees in Massachusetts); Shwartz Aff. ¶ 7 [#29]. Dish disputes this point insofar as it claims that it "does not maintain offices in Massachusetts and does not perform services directly in Massachusetts." Supp. Mem. Defs. Dish Network, Dish DBS, Dish Corp. Change of Venue, 1 [#36].

[36] Pl.'s Opp'n Mot. Dismiss, 4 [#29]. This information is taken from a suit brought by Dish Network (and DirecTV) in the Suffolk Superior Court. Pl.'s Opp'n Mot. Dismiss, 4 [#29].

[37] Shwartz Aff. ¶ 4 [#29] (taking information from Dish's website).

Dandana, as part of the 2007 Agreement, agreed to a general forum selection clause allowing any dispute to be submitted to the federal courts in the United States.[38]

III.    Discussion

A.    Personal Jurisdiction Standard

A plaintiff "'bears the burden of persuading [a] court that jurisdiction exists.'"[39] A plaintiff "'may not rely on unsupported allegations in [the] pleadings, but [is] obliged to adduce evidence of specific facts' sufficient to justify the exercise of jurisdiction over the named defendants, including evidence outside the complaint."[40] The court will also "'add to the mix facts

---

[38] The clause, in relevant part, provides: "The parties agree that this Agreement shall be subject to the provisions of the laws of Egypt, and the courts of Cairo shall have exclusive jurisdiction. Notwithstanding the former, the Licensor or the Licensee shall have the right to refer any dispute under this Agreement to the federal courts of the United States of America with the competent US law being applicable." 1st Am. Compl., Ex. B [#15] (attaching Addendum to the Agreement between Plaintiff and Dandana); see also Pl.'s Opp'n Mot. Dismiss, 4 [#29].

[39] Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010) (quoting Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)). A plaintiff's burden may be of three different varieties. See, e.g., Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145–47 (1st Cir. 1995) (explaining the prima facie, preponderance-of-the-evidence, and likelihood standards); Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675–79 (1st Cir. 1992) (same). The Parties and this court appear to agree on the prima facie standard. See, e.g., Mem. Law Supp. Defs.' Mot. Dismiss Pl.'s Am. Compl., 5 [#26] (focusing its discussion on the prima facie standard) [hereinafter Mem. Defs.' Mot. Dismiss]; Pl.'s Mem. Opp'n Defs.' Mot. Dismiss Lack Personal Jurisdiction & Improper Venue, 7 [#29] (same) [hereinafter Pl.'s Opp'n Mot. Dismiss]. Moreover, none of the conditions that would justify a departure from the prima facie standard are present. Cf. Boit, 967 F.2d at 676 (discussing how a preponderance-of-the-evidence standard may apply where, for instance, the "proffered evidence is conflicting," the record is "rife with contradictions," or a plaintiff's affidavits are "patently incredible" (internal citations and quotation marks omitted)).

[40] Berklee Coll. of Music, Inc. v. Music Indus. Educators, Inc., 733 F. Supp. 2d 204, 208 (D. Mass. 2010) (Tauro, J.) (quoting Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006)). A court will accept those "specific facts affirmatively alleged by the plaintiffs as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." Platten, 437 F.3d at 134 (quoting Mass. Sch. of Law, 142 F.2d at 34).

7

put forward by the defendants, to the extent that they are uncontradicted.'"[41]

Personal jurisdiction exists if a federal court may exercise authority over a defendant on the basis of either specific or general jurisdiction.[42] To establish specific jurisdiction, a plaintiff must show both that the Massachusetts long-arm statute[43] grants jurisdiction over the defendant and that "'the exercise of jurisdiction under the statute is consistent with the [United States C]onstitution.'"[44] Specific jurisdiction exists only if "'the cause of action arises directly out of, or relates to, the defendant's forum-based contracts.'"[45] To establish specific personal jurisdiction, a plaintiff must establish three elements: "relatedness," "purposeful availment," and "reasonableness."[46]

General jurisdiction, by contrast, "'may be asserted in connection with suits not directly founded'" on a defendant's forum-based conduct.[47] General jurisdiction exists if three

---

[41] Platten, 437 F.3d at 134 (quoting Mass. Sch. of Law, 142 F.2d at 34).

[42] Brown Rudnick Berlack Israels LLP v. Brooks, 311 F. Supp. 2d 131, 132 (D. Mass. 2004) (Tauro, J.) (quoting Mass. Sch. of Law, 142 F.3d at 34).

[43] G.L. ch. 223A, § 3.

[44] Brown Rudnick, 311 F. Supp. 2d at 133 (alteration in original) (quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002)); see Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) ("[D]ue process requires[, inter alia, that] . . . [a defendant] have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940))).

[45] Cossaboon, 600 F.3d at 31 (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994)).

[46] Negron-Torres v. Verizon Commc'ns, 478 F.3d 19, 24 (1st Cir. 2007) (quoting Platten, 437 F.3d at 135).

[47] Cossaboon, 600 F.3d at 31 (quoting Prizker, 42 F.3d at 59).

requirements are met.  First, a defendant must have sufficient contacts with the forum state.[48]

That is, the defendant must have engaged "in the 'continuous and systematic' pursuit of general

business activities in the forum state."[49]  The standard for establishing general jurisdiction is also

"'considerably more stringent'" than the standard for specific jurisdiction.[50]  Second, these

contacts must be purposeful.[51]  Third, "the exercise of jurisdiction must be 'reasonable under the

circumstances.'"[52]  The reasonableness inquiry, the third test, is not a primary focus and involves

consideration of the so-called "Gestalt factors."[53]  In assessing a claim for general jurisdiction, a

court looks to factors such as instate ownership of property, "a license to do business within the

state, the payment of state taxes, the instate presence of corporate offices, officers, and

---

[48] Cossaboon, 600 F.3d at 32 (citing 432 F.3d at 57).

[49] Glater v. Eli Lilly & Co., 744 F.2d 213, 216 (1st Cir. 1984) (quoting Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437 (1952)); see also Brown Rudnick, 311 f. Supp. 2d at 133 ("There is general jurisdiction 'when the defendant is engaged continuous and systematic activity in the forum, even if the activity is unrelated to the suit.'" (quoting Daynard, 290 F.3d at 51)).

[50] Cossaboon, 600 F.3d at 32 (quoting Glater, 744 F.2d at 216).

[51] Cossaboon, 600 F.3d at 32 (citing Harlow v. Children's Hospital, 432 F.3d 50, 57 (1st Cir. 2005).  The second test is "only satisfied when a defendant 'purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts.'"  Cossaboon, 600 F.3d at 31 (quoting United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 623 (1st Cir. 2001)).

[52] Cossaboon, 600 F.3d at 31 (quoting Harlow, 432 F.3d at 57).

[53] Cossaboon, 600 F.3d at 33 (internal citation omitted).  The Gestalt factors include:

(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Id. (internal citation and quotation marks omitted).

employees, contracts signed with states residents, and the volume of business regularly transacted and solicited in the forum state."[54]

B.  The Dish Defendants

1.  Specific Jurisdiction

The Dish Defendants contend that this court lacks specific personal jurisdiction over them.[55]  Plaintiff does not disagree with Dish's argument.  Plaintiff only argues that this court has general jurisdiction over Dish.[56]  This court therefore moves to the question of general jurisdiction.[57]

2.  General Jurisdiction

Plaintiff relies on various facts for this court to exercise general jurisdiction over Dish. First, Plaintiff points to Dish's solicitation of customers through its interactive web site and ongoing local television campaign.[58]  Second, Dish has sought the protection of Massachusetts' courts by bringing suit here.  Third, Dish has four locations here and has listed employment

---

[54] In re: Lupron Mktg. & Sales Practices Litig., 245 F. Supp. 2d 280, 289 (D. Mass. 2003) (citing Swiss Am. Bank, 274 F.3d at 619–20).

[55] Mem. Law Supp. Defs.' Mot. Dismiss Pl.'s Am. Compl., 6–7 [#26].

[56] See Pl.'s Opp'n Mot. Dismiss, 9–12 [#29].

[57] Plaintiff, moreover, has not adverted to any of the usual factors to demonstrate that there is a sufficient relatedness between Plaintiff's claims and Dish's actions in Massachusetts to warrant the exercise of specific personal jurisdiction.  This is neither a case in which the terms of a contract were "formalized and entered into" in the forum state nor where Dish was "subject to 'substantial control and ongoing connection to [Massachusetts] in the performance of this contract.'" Adams v. Adams, 601 F.3d 1, 6 (1st Cir. 2010) (internal citations omitted).

[58] Pl.'s Opp'n Mot. Dismiss, 11–12 [#29].

positions at those locations.[59]  Finally, Dish is registered to do business in Massachusetts and has over 70,000 customers in Massachusetts.[60]

The First Circuit has instructed that, for the purposes of the general jurisdiction analysis, courts "'consider all of a defendant's contacts with the forum state <u>prior</u> to the filing of the lawsuit.'"[61]  This court will not play fast and loose with the First Circuit's teaching.  This court will follow the doctrine literally.

Even though this court construes specific facts affirmatively alleged in Plaintiff's favor,[62] Plaintiff has failed to provide a <u>prima facie</u> showing that the Dish Defendants have sufficient purposeful contacts with Massachusetts.  Nearly every alleged critical contact of Dish's either occurred after the filing of Plaintiff's lawsuit or Plaintiff has failed to clarify when the contacts took place.[63]  All of Plaintiff's allegations regarding (a) Dish's allegedly interactive website as well as (b) Dish's extensive advertising both for subscribers and employment positions in the Commonwealth occurred on or after October 25, 2010,[64] about half a year after Plaintiff filed

---

[59] <u>See</u> <u>supra</u> note 37 and accompanying text.  Dish claims that it does not do any business "directly" in Massachusetts and that there is no "evidence of indirect contacts through independent agents."  Opp'n Mem. Supp. Mot. Dismiss, 18–19 [#26] (claiming also that neither Dandana nor Dish engage in advertising in Massachusetts).

[60] Pl.'s Opp'n Mot. Dismiss, 10 [#29].

[61] <u>See</u> <u>Cossaboon</u>, 600 F.3d at 29 (emphasis added) (quoting <u>Harlow</u>, 432 F.3d at 65)).

[62] <u>See</u> <u>supra</u> note 43 and accompanying text.

[63] Nearly all of Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss exclusively refers to relevant facts as they occurred as "of the date of [Defendants'] Opposition." Pl.'s Opp'n Mot. Dismiss, 3 [#29].

[64] Shwartz Aff., 2–8 [#29].

suit.[65]  Similarly, both the <u>First Amended Complaint</u>'s vague allegations regarding Dish's

advertising and marketing, as well as Dish's alleged employment of individuals in the

Commonwealth (at Dish's offices),[66] lack any specifics as to when those contacts occurred.

Because these allegations were added after Plaintiff's original <u>Complaint</u> and the First Circuit has

instructed that the <u>prima facie</u> showing "must be based upon evidence of specific facts set forth in

the record,"[67] this court is not at liberty to assume that the above alleged contacts occurred before

Plaintiff filed suit.  This court therefore does not consider those contacts in its general jurisdiction

analysis.

The only three contacts that are alleged to have occurred prior to the filing of Plaintiff's

suit are, even in the aggregate,[68] insufficient to confer personal jurisdiction over the Dish

Defendants.  First, Dish DBS's registration in Massachusetts adds, at most, only modest weight to

the jurisdictional analysis.[69]  But this fact alone is woefully inadequate to deem Dish as having

purposeful contacts with Massachusetts.  Second, Dish's involvement in an unrelated lawsuit in

Massachusetts is, at most, a featherweight in this court's consideration of whether to exercise

---

[65] <u>See</u> Compl. [#1].

[66] 1st Am. Compl. ¶ 14–17 [#15].

[67] <u>United States v. Swiss Am. Bank, Ltd.</u>, 274 F.3d 610, 619 (1st Cir. 2001) (internal citation and quotation marks omitted).

[68] <u>See</u> <u>Cossaboon</u>, 600 F.3d at 33 (citing <u>Noonan v. Winston</u>, 135 F.3d 85, 93 (1st Cir. 1998)) (discussing how a court's exercise of general jurisdiction depends on its view of the contacts in the aggregate but may separately examine each of the contacts).

[69] <u>Fiske v. Sandvik Mining & Constr. USA, LLC</u>, 540 F. Supp. 2d, 250, 256 (D. Mass. 2008) (citing <u>Sandstrom v. Chemlawn Corp.</u>, 904 F.2d 83, 90 (1st Cir. 1990)).

general jurisdiction over the Dish Defendants.[70] Third, although Dish Network may have 70,000 customers in Massachusetts, this figure constitutes only about .5% of Dish's total amount of customers. Dish Network's resulting amount of Massachusetts-based revenue is inadequate for this court to declare that Dish Network has sufficient contacts with Massachusetts.[71] Considered together, these factors constitute far less than the contacts that the First Circuit has deemed insufficient to confer general jurisdiction.[72] This court therefore holds that Plaintiff has failed to establish that the Dish Defendants maintained purposeful, continuous and systematic contacts with Massachusetts such that Dish should reasonably anticipate being subject to suit in Massachusetts.[73]

C.    Dandana

Defendants argue that this court should not exercise personal jurisdiction over Dandana

---

[70] Sandstrom, 904 F.2d at 90 (explaining that a forum state could not constitutionally exercise general jurisdiction over a party that was both registered to do business in the state and was involved in litigation in that state (internal citations omitted)).

[71] See Newman v. European Aeronautic Defence & Space Co. EADS N.V., 700 F. Supp. 2d 156, 168–69 (D. Mass. 2010) (holding that the district court could not exercise general jurisdiction over the SimCom defendants where defendants derived 1.36% of its revenue from the forum state but were not registered to do business in Massachusetts and had no Massachusetts-based employees).

[72] See Cossaboon, 600 F.3d at 31 (noting that a defendant hospital's treatment of forum state residents resulted in 3.24% of that hospital's total revenue and holding that defendant lacked sufficient contacts to establish general jurisdiction despite advertising, operating an interactive website, being registered to do business, and having one employee in the forum state, as well as treating a "substantial number" of forum state residents).

[73] This court need not consider the reasonableness of the exercise of jurisdiction because of its holding regarding Dish's insufficiency of contacts with Massachusetts. See Cossaboon, 600 F.3d at 39 n.7 (citing Sandstrom, 904 F.3d at 89).

because it has not engaged advertising, solicitation, or most importantly, business activity, in Massachusetts.[74]  Plaintiff replies that Dandana is subject to general jurisdiction because Dandana entered into a forum-selection clause in a freely-negotiated international commercial transaction, which this court can view as unfair or unreasonable only if the trial would be so gravely difficult and inconvenient that the subject party would be deprived of its day in court.

The First Circuit has determined that forum-selection clauses in diversity actions present an Erie question that has not yet been resolved by the Supreme Court.[75]  Under federal law, contractual forum-selection clauses are "'prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances.'"[76] Massachusetts courts, when determining whether to enforce a forum-selection clause, apply the Bremen reasonableness (or fairness) standard.[77]  Because there is no material discrepancy between Massachusetts's state law and federal law, this court "need confront neither the choice-of-law issue nor the daunting question whether forum selection clauses are to be treated as substantive or procedural for Erie purposes."[78]

---

[74] Mem. Defs.' Mot. Dismiss, 7–9 [#26].

[75] Lambert v. Kysar, 983 F.2d 1110, 116 n.10 (1st Cir. 1993).

[76] Silva v. Encyclopedia Britannica, Inc., 239 F.3d 385, 386 (1st Cir. 2001) (quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972)); see also The Bremen, 407 U.S. at 15 ("[T]he forum clause should control absent a strong showing that it should be set aside. . . . [the resisting party should] clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.").

[77] See, e.g., Cambridge Biotech Corp. v. Pasteur Sanofi Diagnostics, 433 Mass. 122, 130 (2000) (quoting The Bremen, 407 U.S. at 18).

[78] Lambert, 983 F.2d at 1116.

Under the <u>Berman</u> inquiry, "the threshold question in interpreting a forum-selection clause is whether the clause is permissive or mandatory."[79] A permissive forum-selection clause, often described as a "consent to jurisdiction" clause, authorizes "jurisdiction and venue in a designated forum, but do[es] not prohibit litigation elsewhere . . . In contrast, [a] mandatory forum selection clause[] contain[s] clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum."[80]

The forum-selection clause here actually presents two forum-selection clauses. The first clause selects "the courts of Cairo," whereas the second clause selects all "federal courts of the United States of America with the competent US law being applicable."[81] Because the language of the first clause provides that "the courts of Cairo shall have exclusive jurisdiction,"[82] it appears to be mandatory,[83] at least when read in isolation. The second clause, in contrast, is ambiguous. It merely affords the Licensee or Licensor the "right to refer" disputes to "federal courts of the

---

[79] <u>Rivera v. Centro Medico de Turabo, Inc.</u>, 575 F.3d 10, 17 (1st Cir. 2009).

[80] <u>Id.</u> (quoting 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3803.1 (3d ed. 1998)).

[81] 1st Am. Compl., Ex. B [#15].

[82] 1st Am. Compl., Ex. B [#15].

[83] <u>See, e.g.</u>, <u>Lambert</u>, 983 F.2d at 1112–13 (holding that a forum-selection clause was mandatory where it stated that for "any action brought to enforce such terms and conditions, venue shall lie exclusively in Clark County, Washington"); <u>Action Corp. v. Toshiba Am. Consumer Prods. Inc.</u>, 975 F. Supp. 170, 176 (D.P.R. 1997) (explaining that mandatory terms include "shall," "exclusive," "only," and "must"); <u>Perez-Llantin v. Sea Star Line, LLC</u>, No. 06-1406CCC, 2006 U.S. Dist. LEXIS 46262, at *2–3 (D.P.R. 2006) (holding that a forum-selection clause was mandatory because it provided for "exclusive jurisdiction and venue" in a particular court).

United States of America."[84]  The second clauses's language, including the broad reference to "any dispute," could perhaps be considered mandatory.[85]  Most importantly, however, the second clause begins with the words "[n]otwithstanding the former."[86]  These words indicate that the second clause, whether it be permissive or mandatory (or purposely ambiguous), is meant to override the first clause.[87]  This court concludes, therefore, that the first forum-selection clause favoring Egypt is of no effect once the Licensee or Licensor invokes the second clause, as Plaintiff has done here.[88]

This court notes that Dandana has not presented any argument that the forum selection clause should not be enforced for being unfair or unreasonable.[89]

Because of Dandana's valid agreement to a forum-selection clause, this court need not

---

[84] 1st Am. Compl., Ex. B [#15].

[85] See APL Co. PTE Ltd. v. Kemira Water Solutions, Inc., No. 09-3967 SC, 2010 U.S. Dist. LEXIS 21720, at *10–11 (N.D. Cal. Mar. 10, 2010) (noting that a forum-selection clause that provided a party the right to "refer any claim or dispute" to the Southern District of New York was ambiguous when read in isolation, but concluding that the clause was functionally equivalent to an exclusively forum-selection provision because the court construed the clause against the drafter of the contract and the contract used the broad reference to "any claim or dispute").

[86] 1st Am. Compl., Ex. B [#15].

[87] See Cisneros v. Alpine Ridge Group, 508 U.S. 10, 18 (1993) ("[T]he use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." (citing Shomberg v. United States, 348 U.S. 540, 547–48 (1955))).

[88] The second clause, in toto and once invoked by the appropriate party, is therefore the functional equivalent of an exclusive clause, at least insofar as it mandates the Licensee and Licensor's case remain in federal district courts.

[89] See The Bremin, 407 U.S. at 10–15; Cambridge Biotech, 433 Mass. at 130; Jacobson v. Mailboxes Etc. U.S.A., Inc., 419 Mass. 572, 574–75 (1995).

consider whether Dandana has engaged in constitutionally sufficient contacts with Massachusetts. Other federal district courts, including courts in this district, have held that "contractual stipulation to a particular forum implies consent to personal jurisdiction in that forum."[90] Dandana provides no reason to depart from this holding. Although these cases all appear to address forum-selection clauses that specify particular judicial districts, there is no sound rationale (and Dandana presents none) why this rule of consent cannot apply to a forum-selection clause that adverts to all of the judicial districts in the United States. Dandana signed a clause agreeing to personal jurisdiction in any federal district court, and as such waived its objections both to venue and personal jurisdiction.

D.    Venue

Defendants argue that venue has not been properly conferred in this case. Plaintiff argues that Dish resides in Massachusetts because this court may exercise personal jurisdiction over Dish.

Where there are multiple defendants, venue must be proper as to every defendant.[91] All well-pleaded "allegations in the complaint bearing on the venue question are taken as true, unless contradicted by the defendant's affidavits. A district court may examine facts outside the

---

[90] Inso Corp. v. Dekotec Handelsges, mbH, 999 F. Supp. 165, 167 (D. Mass. 1998) (collecting cases); see also Richardson Greenshields Secs., Inc. v. Metz, 566 F. Supp. 131, 133 (S.D.N.Y. 1983) ("A waiver of objection to venue would be meaningless, however, if it did not also contemplate a concomitant waiver of objection to personal jurisdiction." (citing Merrill Lynch, Pierce, Fenner & Smith v. Lecopulos, 553 F.3d 842, 844 (2d Cir. 1977))).

[91] See, e.g., Sullivan v. Tagliabue, 785 F. Supp. 1076, 1082 (D.R.I. 1992).

complaint to determine whether venue is proper."[92]  In the First Circuit, at the least, the burden is

on the plaintiff to establish that the chosen district is proper.[93]

Plaintiff has failed to meet its burden of establishing that venue is proper in the chosen

district.  A case based on diversity of jurisdiction, such as this one, is governed by 28 U.S.C.

§ 1391(a).[94]  None of the three subsections of section 1391(a) are pertinent here.  Subsection

(a)(1) does not establish proper venue because the Dish Defendants have not been deemed to

reside in Massachusetts or been subject to personal jurisdiction here.[95]  Subsection (a)(2) does not

apply because the events or omissions giving rise to Plaintiff's claim occurred outside of

---

[92] Turnley v. Banc of Am. Inv. Servs., Inc., 576 F. Supp. 2d 204, 211 (D. Mass. 2008
(quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1352 (3d
ed. 2004)).

[93] See, e.g., Cordis Corp. v. Cardiac Pacemakers, 599 F.2d 1085, 1086–87 (1st Cir.
1979); Turnely 576 F. Supp. 204 at 211–12 & n.6 (noting the split of authority regarding which
party carries the burden of proof when an objection to venue is raised).  But see Great Western
Mining & Mineral Co. v. ADR Options, Inc., No. 10-3142, 2011 U.S. App. LEXIS 13295, at
*8–9 (3d Cir. June 28, 2011) (citing Myers v. Am. Dental Ass'n, 695 F.2d 716, 724–25 (3d Cir.
1982)) (arguing that the burden of proving a lack of proper venue always remains with the
defendant because improper venue is an affirmative defense).

[94] The statute provides in relevant part:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may,
except as otherwise provided by law, be brought only in (1) a judicial district where any
defendant resides, if all defendants reside in the same State, (2) a judicial district in which
a substantial part of the events or omissions giving rise to the claim occurred, or a
substantial part of property that is the subject of the action is situated, or (3) a judicial
district in which any defendant is subject to personal jurisdiction at the time the action is
commenced, if there is no district in which the action may otherwise be brought.

Id.

[95] See 28 U.S.C. § 1391(c) ("For purposes of venue under this chapter, a defendant that is
a corporation shall be deemed to reside in any judicial district in which it is subject to personal
jurisdiction at the time the action is commenced.").

Massachusetts. Insofar as the contract was negotiated, executed, and allegedly not paid for outside of Massachusetts, the "entire sequence of events underlying the claim" occurred elsewhere.[96] The lone exception is Dish's broadcast of the music channel signal into states all across the country, including Massachusetts. This exception, however, is a mere outgrowth and tangential to the sequence of events underlying Plaintiff's claims and therefore does not approach the requirement of being a "substantial" event.[97] Subsection (a)(3), lastly, is inapplicable here because Plaintiff has not pled any facts to establish that no other district has jurisdiction over this case.[98]

      E.      <u>Dismissal or Transfer</u>[99]

---

[96] <u>Uffner v. La Reunion Francaise, S.A.</u>, 244 F.3d 38, 41 (1st Cir. 2001) (internal citation omitted).

[97] <u>Uffner</u>, 244 F.3d at 43 (citing <u>Cottman Transmission Sys. v. Martino</u>, 36 F.3d 291, 294 (3d Cir. 1994)) (explaining that the event occurring in the district must be "substantial" and concluding that, in a suit against an insurance company to recover for losses resulting from a vessel casualty, venue was appropriate in a jurisdiction where that loss occurred).

[98] Rightfully so, given that the District of Colorado, the headquarters of the Dish Defendants, appears to have jurisdiction over this case.

[99] Neither Party, particularly Plaintiff, has asked this court to consider exercising its authority and broad discretion in severing the sole claim asserted against the Dish Defendants. <u>See, e.g.</u>, <u>Archway Ins. Servs., LLC v. Harris</u>, No. 10-5867, 2011 U.S. Dist. LEXIS 64455, at *11 (E.D. Pa. June 15, 2011) ("'[F]ederal Rule of Civil Procedure 21] has been used to correct a defect in venue by severing the claim asserted against the party as to whom venue is improper and either transferring that portion of the action to a more convenient forum or dismissing it.'" (quoting 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1682 (3d ed. 2001)). This court therefore does not entertain the argument. <u>See</u> <u>Harriman v. Hancock Cnty.</u>, 627 F.3d 22, 28 (1st Cir. 2010) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (citation and internal quotation marks omitted)); <u>cf.</u> <u>Casas Office Machs., Inc. v. Mita Copystar Am., Inc.</u>, 42 F.3d 668, 677 (1st Cir. 1994) (quoting <u>Newman-Green</u>, 490 U.S. at 837) (noting that the authority to dismiss a dispensable non-diverse party should be exercised "sparingly").

Where venue is improper, a court must dismiss or transfer the case.[100]  Courts have held that "transfer is generally preferable to dismissal."[101]  Transfer is also preferred where a plaintiff will face a loss of his cause of action due to the "operation of the applicable statute of limitations."[102]

This court chooses to transfer the case to the District of Colorado.  Neither Party has suggested whether Plaintiff will lose a cause action due to any applicable statute of limitations.  But Defendants conceded and Plaintiff did not dispute that the District of Colorado would have personal jurisdiction over all Defendants and be an appropriate venue.[103]  Defendants, in fact, request transfer to Colorado or, alternatively, New Jersey.[104]  Defendants therefore "certainly do

---

[100]  See Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1406(a) (mandating that a court either dismiss or transfer an improperly-venued action).  Because it is "well settled that a court may transfer a case sua sponte pursuant to" 28 U.S.C. § 1406(a), Desmond v. Nynex Corp., No. 94-1230, 1994 U.S. App. LEXIS 29346, at *7 (1st Cir. Oct. 20, 1994) (internal citation omitted), it is immaterial that the Parties did not explicitly raise the issue until prompted by this court, see Order [#34].

[101]  Cormier v. Fisher, 404 F. Supp. 2d 357, 363 (D. Me. 2005) (collecting cases); see also Johnson v. Ry. Exp. Agency, Inc., 421 U.S. 454, 466 n. 12 (1975) (stating that § 1406(a) reflects an "express federal policy liberally allowing transfer of improper-venue cases"); Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962) ("§ 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue[.]").

[102]  Dindio v. First Babylon, Inc., 328 F. Supp. 2d 126, 128 (D. Mass. 2004) (quoting Mulcahy v. Guertler, 416 F. Supp. 1083, 1086 (D. Mass. 1976)).

[103]  Defendants made this point in front of this court at June 21, 2011 Motion Hearing.  This court concludes that this admission is reasonable because the Dish Defendants all have their principal place of business in Colorado.  See 1st Am. Compl. ¶ 3–5 [#15].

[104]  Supp. Mem. Defs. Dish Network, Dish DBS, Dish Corp. Change of Venue, 3 [#36].

20

not object" to this outcome.[105]  Moreover, as far as this court can discern, Plaintiff's case should

not be subject to outright dismissal because there is no appearance that Plaintiff failed to exercise

"proper diligence" or act in good faith in filing suit in Massachusetts.[106]

Plaintiff's contentions against transfer are to no avail.  Plaintiff exclusively argues against

transfer under 28 U.S.C. § 1404(a) and the doctrine of forum non conveniens,[107] but does not

argue against transfer in this different situation where this court's decision is between transferring

and dismissing the case.  Many of Plaintiff's arguments, therefore, are inapplicable.

Insofar as any of Plaintiff's arguments may apply to the decision about where to

transfer,[108] none are overwhelming so as to outweigh transfer to the District of Colorado.  First,

the combination of the forum-selection clause and convenience to the Parties in fact militates in

favor of the District of Colorado.  Because Plaintiff is based in Egypt, Plaintiff would face nearly

the same amount of inconvenience in having to file in New Jersey or Colorado.  Colorado is more

---

[105] Cohen v. New York, No. 10-10002-NAP, 2010 U.S. Dist. LEXIS 114691, at *10 (D. Mass. Oct. 4, 2010), adopted by Cohen v. New York, 2010 U.S. Dist. LEXIS 114690 (D. Mass. Oct. 28, 2010).

[106] Pedzewick v. Foe, 963 F. Supp. 48, 52 (D. Mass. 1997) (citing Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1201 (4th Cir. 1993)).

[107] Opp'n Pl., Stars for Art Production FZ, LLC To Transfer Venue Or Dismiss Based Upon Forum Non Conveniens & Request For Hearing, 2 [#37] [hereinafter Opp'n Pl. Transfer]

[108] In deciding where to transfer a case under § 1406(a), the "question is which forum would be better positioned to further the interests of justice" and the court perhaps should consider the following factors: convenience of the parties, convenience of the witnesses, availability of documents, the possibility of consolidation, and judicial economy.  Johnson v. General Dynamics Info. Tech., Inc., 675 F. Supp. 2d 236, 243 (D.N.H. 2009) (citing Auto Europe, LLC v. Conn. Indem. Co., 321 F.3d 60, 64 (1st Cir. 2003); Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000)) (applying standards, however, from cases both dealing with 28 U.S.C. § 1404(a)).

convenient for the Dish Defendants, whereas New Jersey is more convenient for Dandana. But Plaintiff and Dandana—not Dish—agreed to suit in any federal district court. Therefore, by extension of Plaintiff's own argument regarding the forum-selection clause,[109] the inconvenience to the Dish Defendants should receive greater weight than the inconvenience to the other Parties. Second, the other factors, including (a) the apparent absence of "non-employee witnesses" who will need to testify or be unwilling to appear of their own accord[110] and (b) that access to proof is equal in all forums and the First Amended Complaint contains all "known agreements,"[111] weighs in favor of neither Colorado nor New Jersey. Third, despite Plaintiff's counsel's presence in Massachusetts, the presence of counsel has "little bearing on the analysis."[112] Finally, given that Colorado is more clearly a proper venue for Defendants than New Jersey, this court chooses to transfer this case to the District of Colorado.

F.     Jurisdictional Discovery

Plaintiff has requested the opportunity to conduct jurisdictional discovery if this court finds that the existing evidence is inadequate to exercise personal jurisdiction over the Dish Defendants.[113]

A diligent plaintiff "'who sues an out-of-state corporation and who makes out a colorable

---

[109] Opp'n Pl. Transfer, 9 [#37] (arguing that the forum-selection clause permits the suit to be filed in any district).

[110] Opp'n Pl. Transfer, 7 [#37].

[111] Opp'n Pl. Transfer, 7 [#37].

[112] General Dynamics, 675 F. Supp. 2d at 243 (internal citations omitted).

[113] Pl. Stars for Art, LLC's Mot. For Leave Conduct Jurisdictional Discovery With Statement Reasons [#30] [hereinafter Pl.'s Mot. Discovery].

case for the existence of in personem jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense.'"[114]  This entitlement, however, is not absolute.[115]  Even if a plaintiff is diligent and makes a colorable claim for personal jurisdiction, a district court has "broad discretion to decide whether discovery is required."[116]

Plaintiff's request for jurisdictional discovery is denied for a few reasons.

First, Plaintiff has not made a colorable claim for personal jurisdiction.  Plaintiff's allegations resoundingly fail to show that the Dish Defendants have purposeful contacts with Massachusetts such that they could be subject to general jurisdiction.  Further, the Parties agree that specific jurisdiction does not apply.  Indeed, none of the underlying acts comprising the alleged breach of contract, fraud, and related actions occurred in Massachusetts.  The contract at issue was executed entirely outside of Massachusetts and between corporations based in Egypt and New Jersey.[117]  The only connection is Dish's alleged broadcast in Massachusetts, which not only seemingly occurred across all of the United States, but is also a mere appendage of the events or omissions giving rise to Plaintiff's Complaint.

Second, Plaintiff's additional pertinent avenues of inquiry are insufficiently detailed to justify allowing the Motion.  Plaintiff, beyond saying that its proposed lines of inquiry will yield

---

[114] Swiss Am. Bank, 274 F.2d at 625 (quoting Sunview Condominium Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962, 964 (1st Cir. 1997)).

[115] Sunview, 116 F.3d at 964.

[116] Crocker v. Hilton Int'l Barb., Ltd., 976 F.2d 797, 801 (1st Cir. 1992).

[117] See Opp'n Pl., Stars for Art Production FZ, LLC To Transfer Venue Or Dismiss Based Upon Forum Non Conveniens & Request For Hearing, Ex. 1 [#37] (attaching affidavit of Moustafa Gaber, General Manager of Plaintiff, explaining that the contract was negotiated and signed in Egypt) [hereinafter Opp'n Pl. Transfer].

"additional evidence to submit in amended oposition,"[118] fails to explain or cite case law as to how

these proposed lines of inquiry would be directly relevant to its personal jurisdiction argument.[119]

Similarly, Plaintiff has failed to allege the "specific contacts" that are relevant to establishing

personal jurisdiction.[120]  In particular, Plaintiff seeks information that is either seemingly broad[121]

or irrelevant to the personal jurisdiction inquiry,[122] therefore providing further grounds to deny

Plaintiff's request.[123]

　　　　Third, discovery is not required here because of the adequacy and convenience of an

alternate forum, as discussed above.


IV.　　Conclusion

---

[118] Pl.'s Mot. Discovery, 2 [#30].

[119] RealTrust IRA Alternatives, LLC v. Entrust Group, No. 10-cv-382-LM, 2011 U.S. Dist. LEXIS 36513, at *4–6 (D.N.H. Mar. 21, 2011) (denying a request jurisdictional discovery where the requesting party presented "no argument about why jurisdiction would be found if discovery were permitted").

[120] Swiss Am. Bank, 274 F.3d at 626–27 ("Failure to allege specific contacts, relevant to establishing personal jurisdiction, in a jurisdictional discovery request can be fatal to that request." (internal citations omitted)).

[121] See Pl.'s Mot. Discovery, 2 [#30] (requesting "[a]ny communications, written or oral, between Dish and any person or entity located within Massachusetts").

[122] See Pl.'s Mot. Discovery, 2 [#30] (requesting the salaries of Defendant's employees working in the Commonwealth).

[123] See Crocker, 976 F.2d at 801 (denying discovery where appellants sought information, irrelevant to forum contacts, on solicitation of business and the provision of goods or services outside of the forum); Noonan, 135 F.3d at 94 (denying discovery where plaintiffs sought information about the interrelationships among the defendants; information irrelevant to purposeful availment).

For the foregoing reasons, Defendants' <u>Motion to Dismiss Amended Complaint</u> [#25] is

ALLOWED IN PART and DENIED IN PART.  Plaintiff's <u>Motion for Leave to Conduct</u>

<u>Jurisdictional Discovery with Statement of Reasons</u> [#30] is DENIED WITHOUT PREJUDICE.

AN ORDER HAS ISSUED.

_____/s/ Joseph L. Tauro_____<br>
United States District Judge
